FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUL 31 PM 3: 40
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DIANA DAVIS ROVIRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 111-127 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Diana Davis Rovira ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.     BACKGROUND

Plaintiff applied for DIB on April 1, 2007, alleging a disability onset date of May 27, 2005. Tr. ("R."), pp. 120-27, 143. The Social Security Administration denied Plaintiff's applications initially, R. 73, 75-78 and on reconsideration, R. 74, 84-87. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on September 2, 2009. R. 16, 35-72. Plaintiff, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard testimony from Plaintiff's roommate and a

Vocational Expert ("VE"). R. 40-55, 57-61, 61-69. On November 4, 2009, the ALJ issued an unfavorable decision. R. 18-34.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since May 27, 2005, the alleged onset of disability (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: depression, bipolar disorder, complex partial seizures, hypertension, and hypothyroidism (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform a range of medium exertional work,[1] except that the claimant is limited to occasional interaction with coworkers, the public, and supervisors. Based on this RFC assessment, the claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as hand packager, poultry hanger (meat), and hospital cleaner. (20 C.F.R. §§ 404.1569 and 404.1569(a)). Additionally, because the claimant has transferrable skills involving record keeping and taking vital signs, she could also have performed the jobs of customer complaint clerk, animal hospital clerk, and order filler. Thus, the claimant was not under a disability, as defined in the Social Security Act, from May 27, 2005 through November 4, 2009. (20 C.F.R. § 404.1520(g)).

R. 23-34.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

2

When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to give proper weight to the opinions of Plaintiff's treating physician, and (2) the ALJ failed to make a finding regarding Plaintiff's credibility. (See doc. no. 10 (hereinafter "Pl.'s Br."); doc. no. 12 (hereinafter "Pl.'s Reply Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 11 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence

3

to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Weight of Treating Physician's Opinions

Plaintiff first contends that the ALJ improperly discounted the opinions of Priscilla A. Gilman, M.D., Plaintiff's treating psychiatrist. Pl.'s Br., pp. 3-14; Pl.'s Reply Br., pp. 2-8. Plaintiff asserts that if the ALJ had given proper weight to Dr. Gilman's responses to two mental impairment questionnaires significantly limiting Plaintiff's mental RFC, there would be no work that Plaintiff would be able to perform. Pl.'s Br., pp. 4, 12.

In particular, Plaintiff argues that contrary to the ALJ's findings, Dr. Gilman's opinions are consistent with her treatment notes and with the opinions of Coleman King, M.D., one of Plaintiff's physicians, who opined that Plaintiff "can't work period" due to her bipolar disorder, major depression, and attention deficit hyperactivity disorder ("ADHD"), as well as the opinion of Suzanne Smith, M.D., Plaintiff's neurologist, who opined that Plaintiff cannot perform job duties that require sustained attention and concentration due to her temporal lobe epilepsy, bipolar disorder, and ADHD. Pl.'s Br., pp. 8-9 (citing R. 691, 694). Plaintiff asserts that by rejecting Dr. Gilman's opinion evidence, the ALJ thereby improperly substituted her own judgment for that of Dr. Gilman. Id. at 10-11.

Plaintiff further raises several arguments to support her contention that the ALJ failed to properly evaluate the evidence: (1) although Plaintiff cared for her disabled father, she was not the only one to do so, which supports a finding that she is disabled because, as a trained nurse, Plaintiff should not have required any outside assistance at all; (2) while Plaintiff believed she was capable of work, "[i]t is not uncommon for people to believe they are capable of doing things they cannot do;" (3) although Dr. Gilman's notes reflect that Plaintiff showed improvement in her anxiety, depression, and concentration at times, this does not mean she was sufficiently improved to return to work; (4) while Plaintiff was performing well in school, she worked "when she felt like it," indicating that she was not able to work on a consistent basis; (5) while Dr. Gilman opined that Plaintiff was unable to function outside a highly supportive living arrangement, "[i]t is clear that all Dr. Gilman was saying is that Plaintiff was not able to function well outside her home;" and (6) rather than focusing on the fact that Dr. Gilman released Plaintiff to work on June 13, 2005, the ALJ should have focused on the fact that Dr. Gilman later found that Plaintiff had not sufficiently recovered to return to work. Pl.'s

5

Br., pp. 12-14; Pl.'s Reply Br., pp. 2-8.

By contrast, the Commissioner contends that the ALJ properly discredited Dr. Gilman's opinions because they were contrary to her underlying treatment notes, were not supported by the evidence of record, and were contradicted by Plaintiff's report of her functioning. Comm'r's Br., pp. 4-13. The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of an individual's RFC is an issue reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(d).

Here, although Plaintiff offers a number of arguments for why the ALJ should have

6

interpreted the record evidence in her favor, the Court declines the invitation to decide the facts anew. As the Commissioner persuasively argues, Comm'r's Br., p. 13, the interpretation of evidence such as Dr. Gilman's opinions is the responsibility of the ALJ, and it is not the Court's function to reweigh the evidence or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Indeed, even if the evidence preponderates in Plaintiff's favor, the Court must uphold the Commissioner's decision if it is supported by substantial evidence. Martin, 894 F.2d at 1529. As set forth below, the Court finds that the ALJ properly discredited Dr. Gilman's opinions.

As an initial matter, after identifying that Dr. Gilman's opinions regarding Plaintiff's RFC are opinions on matters reserved to the Commissioner and are therefore not entitled to controlling weight or special significance, the ALJ nonetheless noted that Dr. Gilman's opinions "may not be ignored." R. 29. The ALJ concluded, however, that there was "significant conflict" between Dr. Gilman's opinions, which significantly restricted Plaintiff's mental RFC, and both her treatment notes and Plaintiff's report of her daily life and responsibilities. R. 29, 32.

Specifically, the ALJ noted that contrary to Dr. Gilman's opinion that Plaintiff was unable to function outside a highly supportive living environment, her treatment notes demonstrate that Plaintiff's living arrangement was not highly supportive: the ALJ observed that Plaintiff repeatedly complained that conflicts with both her father and husband were a significant source of stress for her, as was Plaintiff's role as the primary care-giver for her father, who is disabled. R. 23-24, 27, 32, 417, 441, 666, 686, 744. The ALJ further found that Plaintiff's ability to care for her invalid father undermined Dr. Gilman's portrayal of Plaintiff as an individual incapable of self-care. R. 29.

Moreover, the ALJ found that numerous other pieces of evidence conflicted with Dr. Gilman's opinion that Plaintiff was unable to follow even simple directions: the ALJ noted that Dr. Gilman's treatment notes frequently described Plaintiff's ongoing job search, networking with other nurses, and discussions of returning to school to become a nurse advocate. R. 26 (citing R. 501, 504, 507-08, 622, 624). Indeed, the ALJ noted that after Plaintiff was terminated from her job as a nurse in 2005,[2] she was hired as a quality assurance specialist at Humana Insurance, but was let go after two days because the company had improperly screened her and it turned out that she was not qualified for the position. R. 32 (citing R. 42).

The ALJ further noted that Plaintiff testified that she had enrolled in an online graduate school program in December of 2008 to pursue a Master's degree in nursing with a focus on leadership and management, and she had taken "complex and demanding" course work in policy-making, evidence-based care, and nursing research involving statistics. R. 28 (citing R. 51-52). Despite having some difficulty at the beginning of her first semester, the ALJ noted that Plaintiff had attained a grade point average of 3.4 by the time of the September 2009 hearing, which Plaintiff thought was "pretty good." R. 28 (citing 51-52).

Plaintiff's contention that Dr. Gilman's opinions are consistent with her treatment notes because Dr. Gilman frequently observed Plaintiff to be agitated, tense, and suffering from symptoms of depression, ADHD, and bipolar disorder is unavailing. Pl.'s Br., pp. 4-9. Notably, the ALJ observed that Plaintiff had complained of work-related stress and had been

---

[2]The ALJ observed that Plaintiff's termination was due to schedule violations and violations of the Health Insurance Privacy and Portability Act ("HIPPA") rather than because of her mental health symptoms. R. 24-25, 32, 47, 209-211, 451, 455, 468.

8

seeing Dr. Gilman since 1999 for her depression, epilepsy, and ADHD, yet Dr. Gilman opined that Plaintiff "was functioning very well [and] working in spite of these [diagnoses]."[3] R. 23, 31, 397, 749.

Plaintiff also misses the mark with her argument that Dr. Gilman's opinions were consistent with those of Dr. King and Dr. Smith. Notably, Plaintiff acknowledges that Dr. King's opinion that Plaintiff "can't work period" is an opinion on disability reserved to the Commissioner, and thus is not entitled to controlling weight or special significance. Pl.'s Br., p. 8. Moreover, the ALJ specifically noted that Dr. Smith's opinion was unsupported because she had offered no specific examples of Plaintiff's limitations to support her opinion; further, although Dr. Smith listed epilepsy as a disabling impairment, the ALJ noted that Plaintiff had "acknowledged during the hearing that her epilepsy was under control and that she has been seizure free since 2007." R. 31 (citing R. 55); see R. 694. Given the reduced deference owed to these opinions, they do little to bolster Dr. Gilman's opinions, which were themselves contradicted by the evidence.

In short, the ALJ cited to numerous pieces of evidence in the record that demonstrated that Plaintiff was able to care for her ailing father despite a stressful home life, pursue career opportunities, and attain a good grade point average in a graduate nursing program, all of which contradicted the severe limitations Dr. Gilman had imposed on Plaintiff. Inconsistency with other record evidence is a proper basis for discrediting the opinions of a treating source.

---

[3] Additionally, the ALJ also noted that after Plaintiff took leave from work for medical reasons in late May of 2005 – the same time period in which Plaintiff alleges her disability began – Dr. Gilman released her to return to work on June 13, 2005. R. 24 (citing R. 387.) The ALJ noted, however, that Plaintiff requested additional leave shortly thereafter. R. 24 (citing R. 747).

9

See Lewis, 125 F.3d at 1440 (holding that a treating physician's opinion may be properly discounted if it is not bolstered by the evidence or if the evidence supports a contrary finding). Although Plaintiff argues that in discrediting Dr. Gilman's opinions, the ALJ improperly substituted her judgment for that of Dr. Gilman, Pl.'s Br., pp. 10-11, the Commissioner correctly argues that the ALJ was required to assess Plaintiff's RFC, which is a determination reserved to the Commissioner, not to Dr. Gilman, Comm'r's Br., pp. 3-6 (citing 20 C.F.R. §§ 404.1546(c) and 404.1527(d)). This necessarily required the ALJ to weigh Dr. Gilman's opinion evidence to determine whether it was consistent with and supported by the record, which the ALJ did here, as set forth above. See 20 C.F.R. § 404.1527(c)(3)-(4). The ALJ's assessment of Dr. Gilman's opinions, though not compelled by the evidence, was reasonable.

In sum, the ALJ's decision to discredit Dr. Gilman's opinions is supported by substantial evidence, and it should therefore not be disturbed.

**B.    The ALJ Properly Considered Plaintiff's Subjective Complaints**

Plaintiff also contends that the ALJ failed to make a finding as to Plaintiff's credibility. Pl.'s Br., pp. 15-18; Pl.'s Reply Br., pp. 1-2. The Commissioner maintains that while the ALJ's assessment of Plaintiff's credibility necessarily overlapped with her assessment of the medical opinions, the ALJ sufficiently articulated reasons for finding that Plaintiff's allegations as to the severity and limiting effects of her mental impairments were not fully credible. Comm'r's Br., pp. 4-6 (citing R. 30-32). The Court again finds that the Commissioner has the better argument.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show:

(1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[4] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*) (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects the Holt analysis was appropriately followed when reaching the conclusion that Plaintiff's subjective complaints were not credible to the degree alleged. R. 30-32. The ALJ addressed each prong of the Holt analysis as

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

described above, and substantial evidence in the record supports her findings.

First, the ALJ acknowledged that there was evidence of underlying medical conditions constituting severe impairments: depression, bipolar disorder, complex partial seizures, hypertension, and hypothyroidism. R. 23. Having addressed the first prong of Holt, the ALJ went on to evaluate Plaintiff's allegations of the severity of her symptoms stemming from those impairments. The ALJ reviewed the medical evidence of record, and found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. R. 30.

Plaintiff reported being unable to work because of her severe depression and inability to handle stress or concentrate. R. 44-45. As set forth above, *supra* Part III.A., the ALJ noted that although Plaintiff had been diagnosed with depression and ADHD and had complained of work-related stress since 1999, this did not prevent her from working for many years. R. 23 (citing R. 749); R. 30-31 (citing R. 397). Further, although Plaintiff was terminated from her job as a nurse, the ALJ noted that this was due to scheduling and HIPPA violations, not because of her mental conditions. R. 24-25, 32, 47, 209-211, 451, 455, 468. Further undermining Plaintiff's allegations of disabling symptoms, the ALJ observed that Plaintiff had taken numerous steps to challenge her termination and seek new employment. R. 25-26, 32, 42, 468, 482, 501, 504, 507-08, 622, 624. Indeed, the ALJ specifically stated, "despite her allegedly disabling impairments, the claimant has enrolled in a Graduate Program to obtain a Masters in Nursing and is halfway through the program." R. 31 (citing R. 51-52.)

Moreover, although Plaintiff alleged that she had difficulty concentrating, R. 45, the ALJ cited to neuropsychological testing that revealed that Plaintiff's concentration was average

and that her ADHD was improved with medication. R. 25-27, 325, 682. The ALJ also noted Plaintiff's testimony that she had completed complex course work in her first semester of graduate school in a timely manner and that she had achieved a good grade point average. R. 28-29 (citing R. 51-52). After discussing the record evidence with regard to Plaintiff's impairments, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 30. Plaintiff disregards this statement, and appears to contend that the ALJ should have specifically addressed each of the statements she made at the hearing regarding her inability to work. Pl.'s Br., pp. 15-18.

As noted above, the ALJ clearly articulated numerous, specific examples from the record that she used to discount Plaintiff's credibility, including inconsistences between Plaintiff's report of her symptoms and her description of her activities and lifestyle. The Court acknowledges that the ALJ did not state after each inconsistency or evidentiary gap she observed that she was using it as evidence for her credibility determination, but this is not what Dyer requires. See 395 F.3d at 1210 ("The credibility determination does not need to cite particular phrases or formulations. . ."). On the contrary, the ALJ's reasons for discrediting Plaintiff's credibility were "sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Therefore, in satisfying the requirements of Holt, the ALJ also sufficiently explained her reasons for discounting Plaintiff's credibility. Here, the ALJ's credibility determination was based on the record as a whole, and she properly articulated the basis for her determination

in her written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding her symptoms, activities, and lifestyle under the Holt standard. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints concerning her alleged limitations after thoroughly evaluating the evidence in the record. Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562. Accordingly, this issue provides no basis for remand.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 31st day of July, 2012, at Augusta, Georgia.

_W. LEON BARFIELD_
UNITED STATES MAGISTRATE JUDGE